# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ERIC SWALWELL,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Case No. 21-cv-00586 (APM)** |
| | ) | |
| **DONALD J. TRUMP, et al.** | ) | |
| | ) | |
| **Defendants** | ) | |
| | | |
| **JAMES BLASSINGAME & SIDNEY HEMBY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 21-cv-00858 (APM)** |
| v. | ) | |
| | ) | |
| **DONALD J. TRUMP** | ) | |
| | ) | |
| **Defendant** | ) | |

## PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY

At the hearing on January 10, 2022, the Court questioned aspects of the Blassingame plaintiffs' and Representative Eric Swalwell's *per se* claims for violation of various District of Columbia public safety statutes, including inciting to riot (D.C. Code § 22-1322) and inciting

disorderly conduct (D.C. Code § 22-1321 (a)(1), (a)(2) and (b)).[1]  The Blassingame plaintiffs and Rep. Swalwell submit the following supplemental authority in response.

## I. Criminal Statutes That Promote Public Safety Can Serve As The Basis For Civil Liability

First, the Court questioned whether it proved too much to say that criminal statutes designed to promote public safety could serve as the basis for *per se* claims since every criminal statute arguably does that.  On that point, D.C. law is clear that not every criminal statute promotes public safety, but those that do may serve as a basis for civil liability.  In *McCracken v. Walls-Kaufman*, 717 A.2d 346 (D.C. 1998), the District of Columbia Court of Appeals reversed the dismissal of the plaintiff's claims, held that the criminal statute at issue there (for first degree sexual abuse) might indeed qualify as one "adopted in order to promote public safety," and remanded the matter so that the trial court could answer that question in the first instance.  *Id.* at 354.  And in *McNeil Pharmaceuticals v. Hawkins*, 686 A.2d 567 (D.C. 1996), that same court identified "the criminal statute prohibiting false statements to the government, 18 U.S.C. § 1001 (1958)," as one "not intended to promote public safety," and thus unable to support a negligence *per se* claim.  *Id.* at 580.  Anti-riot and disorderly conduct statutes, by contrast, fall in the heartland of statutes designed to promote public safety.

## II. Intentional Violations of Criminal Statutes That Promote Public Safety Can Give Rise to *Per Se* Tort Liability.

Second, the Court questioned whether intentional violations of statutes, as well as negligent ones, could give rise to *per se* tort claims.  The short answer is that intentional violation of a public safety statute can give rise to a *per se* claim for any plaintiff who was in the

---

[1] The claims at issue are Counts 4 and 5 of the Blassingame plaintiffs' complaint and Counts 3 and 4 of Rep. Swalwell's complaint.

class that the statute intended to protect, just like negligent violation of a public safety statute can give rise to a negligence *per se* claim. The courts sometimes lump the two categories together into "negligence *per se*," but whether the conduct is intentional or negligent, it is actionable. *See McCracken*, 717 A.2d at 353–54. The key issues are whether the statute was intended to protect public safety, whether the plaintiff was in the protected class and whether the statutory duties are sufficiently specific. *Id.*

The District of Columbia has long recognized that public safety statutes can create standards of care, the violation of which gives rise to negligence per se claims. A leading and often-cited case is *Zhou v. Jennifer Mall Rest.,* 534 A.2d 1268 (D.C. 1987), in which the Court of Appeals held that a bar that served alcohol to an obviously drunk customer, in violation of the local alcoholic beverage control act and regulations (which could be punished by imprisonment), could be liable to a third party injured by the drunk customer in a car wreck.

*Zhou* concerned alleged negligence by the defendant, but *McCracken* concerned intentional conduct: a sexual assault by a chiropractic doctor against his patient Mrs. McCracken. The McCrackens contended that the standard of care was provided by a D.C. statute that made it a crime for a doctor to engage in a sexual act with a patient if the doctor knows or has reason to know that the patient by reason of their condition or the nature of the treatment "is impaired from declining participation in the act." D.C. Code § 22–4115 (1981).

In reversing a dismissal of the complaint by the trial court and remanding for consideration of whether this was a public safety statute, the Court of Appeals said:

> The McCrackens argue that this statute confirms their right to proceed against Dr. Walls–Kaufman with an action in tort. Violation of a statute may give rise to a civil cause of action, and may constitute negligence *per se* if the statute is meant to promote safety, if the plaintiff is " 'a member of the class to be protected' by the statute," and if the defendant is a person "upon whom the statute imposes specific duties." *Marusa v. District of Columbia,* 157 U.S.App. D.C. 348, 354,

2

> 484 F.2d 828 (1973) (*quoting Whetzel v. Jess Fisher Management Co.,* 108 U.S.App. D.C. 385, 389, 282 F.2d 943 (1960)).
>
> It would be inappropriate for this court to pass on the issue of whether this statute was adopted in order to promote public safety on the limited record before us. While appellants' arguments on this issue are substantial, it is preferable to give the parties the opportunity to make a more complete record on this issue, and for the trial court to rule upon it in the first instance. Should the trial court conclude that such was the purpose of the statute, the court should proceed in accordance with the principles we set forth in *McNeil Pharm. v. Hawkins,* 686 A.2d 567 (D.C. 1996), *Zhou v. Jennifer Mall Rest.,* 534 A.2d 1268 (D.C. 1987), *Ceco Corp. v. Coleman,* 441 A.2d 940 (D.C. 1982), and the other authorities they cite.

*McCracken*, 717 A.2d at 353–54. The cases cited by the Court are all negligence *per se* cases, which supports plaintiff's argument at the hearing that whether the conduct that violates the statute is negligent or intentional, a cause of action can arise in either situation as long as the statute was trying to protect the safety of people like the plaintiff with some specificity about the prohibited conduct.

Another instructive D.C. case on the specificity issue, and the issue of intentional versus negligent conduct, is *Chadbourne v. Kappaz,* 779 A.2d 293 (D.C. 2001), a dog bite case in which the court declined to impose negligence *per se* liability based on D.C.'s leash law against homeowners whose dog escaped their house without their knowledge after their 2-year-old daughter opened the back door to the unfenced back yard while the mother was fixing breakfast. The dog bit a passerby before the family knew the dog was outside. Affirming the trial court's refusal to instruct that violation of the leash law under these facts was negligence per se, the Court of Appeals reasoned:

> In order to find a violation of the District's leash law, the statute calls upon the fact finder to decide whether the animal owner allowed the animal to be at large either by intentionally permitting the animal to run free or by failing to exercise reasonable care to keep the animal from running free. Thus, while the statute sets a general standard of care for animal owners in the District of Columbia, it does not contain the kind of specific guidelines that would allow one to determine whether the statute has been violated without resorting to a common law reasonable care

3

      analysis. Thus, we conclude that a negligence per se instruction was not warranted
      in this case.

*Id.* at 296–97. Had the family intentionally let the dog run free, contrary to the undisputed facts that it was an oversight at most, the court would have had a strong basis to instruct the jury on negligence per se for an intentional violation of the leash law. But as the facts existed, the only issue was whether the owners had "failed to exercise reasonable care," a classic common law negligence question that the statute didn't flesh out. This supports plaintiffs' position here that intentional violation of a safety statute can support a negligence *per se* claim under D.C. law.

      Unlike the leash law, the anti-riot law does contain "specific guidelines," *Chadbourne*, 779 A.2d at 297, about what constitutes prohibited conduct. It defines a riot as a public disturbance caused by the assemblage of "5 or more persons." D.C. Code § 22-1322(a). The conduct of those "5 or more persons" must be "tumultuous and violent" or create "the threat thereof." *Id.* And that conduct must cause or threaten not just any harm, but "*grave* danger of damage or injury to person or property." *Id.* (emphasis added). The statute, in short, does far more than resort to an undifferentiated "common law reasonable care analysis." *Chadbourne*, 779 A.2d at 297.

      In this case, the plaintiffs contend that the anti-riot act's prohibition aimed at "whoever willfully incites or urges other persons to engage in a riot," D.C. Code § 22-1322(c) and (d), sets a standard of prohibited conduct for public speakers in the District of Columbia. Similarly, D.C. Code 22-1321 applies to "any place open to the general public" and prohibits any person from "[i]ncit[ing] or provoke[ing] violence where there is a likelihood that such violence will ensue." Section (a)(2), or to "engage in loud, threatening, or abusive language, or disruptive conduct, with the intent and effect of impeding or disrupting the orderly conduct of a lawful public gathering," section (b).

4

Since these are safety statutes, and since they seek to protect among others police officers defending the Capitol from the riot and the disorderly conduct deliberately set in motion by the defendants, they state valid claims, whether they are called "negligence *per se*" or, as the Blassingame plaintiffs titled them, "*per se* violation of a safety statute."

On the other hand, the District of Columbia does not recognize that any violation of any criminal statute can give rise to a tort claim which other jurisdictions have called "*prima facie* tort." *See generally Taylor v. D.C. Water & Sewer Authority*, 957 A.2d 45, 50-51 (D.C. 2008) (plaintiff contended that battery and intentional infliction of emotional distress against him by a co-worker could give rise to a tort which he called "*prima facie* tort;" Court of Appeals holds that while that cause of action is not recognized in D.C., the facts alleged by plaintiff could amount to a viable claim against the employer for failing to provide a safe workplace).

At the argument on January 10, Blassingame and Hemby's counsel did not intend to disavow that counts four and five of the amended complaint fall under negligence *per se* rubric; counsel was trying only to be more precise about the cause of action applying to both intentional and negligent violations of public safety statutes. There is a long tradition of common law courts using public safety statutes to set standards of care for civil liability. See generally *Restatement (Third) of Torts* (2010), section 14, Statutory violations as negligence per se.

### III. Representative Swalwell Additionally Pleads Facts Sounding in Negligence.

Finally, the Court also raised concerns whether Rep. Swalwell had alleged negligent as well as intentional misconduct as to these claims and whether he was pleading negligent violations of the anti-riot and disorderly conduct statutes in the alternative. The answer to both is yes: Representative Swalwell's Complaint identifies facts by which the Defendants "should have" known the risk their inflammatory language posed on January 6. *See, e.g.*, ECF No. 1

5

(Complaint) ¶¶ 41 (alleging that response to Trump's words about Michigan election results "should have been an obvious sign of the risk inflammatory language could pose on January 6"); 50 (alleging that response to Trump's words about Georgia election results "should have been another warning to the Defendants about the impact of their words at the January 6 rally"); 116 (alleging that crowd's response to Trump Jr.'s speech on January 6 "should have been a sign of how the crowd was receiving the Defendants' claims and allegations"). *See generally id.* ¶¶ 253-61 (Count 9, Negligence). He thus pleads both intentional and negligent violations of those statutes giving rise to civil liability here.

Dated: January 14, 2022                                   Respectfully submitted,

*/s/ Philip Andonian*                                          */s/ Matthew Kaiser*
CALEBANDONIAN PLLC                                KAISERDILLON PLLC
Philip Andonian (D.C. Bar No. 490792)         Matthew Kaiser (D.C. Bar No. 486272)
Joseph Caleb (D.C. Bar No. 495383              William Pittard (D.C. Bar No. 482949)
1100 H Street, N.W., Suite 315                       Sarah Fink (D.C. Bar No. 166663)
Washington, D.C. 20005                                 1099 Fourteenth Street, N.W., 8th Fl.
Telephone: (202) 953-9850                            Washington, D.C. 20005
phil@calebandonian.com                               Telephone: (202) 640-2850
joe@calebandonian.com                                mkaiser@kaiserdillon.com
                                                                        wpittard@kaiserdillon.com
                                                                        sfink@kaiserdillon.com

*/s/ Barry Coburn*
COBURN & GREENBAUM PLLC
Barry Coburn (D.C. Bar No. 358020)
Marc Eisenstein (D.C. Bar No. 1007208)
1710 Rhode Island Avenue, N.W., 2nd Fl.
Washington, D.C. 20036
Telephone: (202) 643-9472
barry@coburngreenbaum.com
marc@coburngreenbaum.com

*Attorneys for Plaintiff Eric Swalwell*

*/s/ Patrick A. Malone*
Patrick A. Malone (Bar No. 397142)
Daniel Scialpi (Bar No. 997556)
Heather J. Kelly (Bar No. 453154)
PATRICK MALONE & ASSOCIATES, P.C.
1310 L Street, N.W., Suite 800
Washington, D.C. 20005
Telephone: 202-742-1500
Facsimile: 202-742-1515
pmalone@patrickmalonelaw.com
dscialpi@patrickmalonelaw.com
hkelly@patrickmalonelaw.com

*Attorneys for Plaintiffs James Blassingame and Sidney Hemby*

**CERTIFICATE OF SERVICE**

I certify that on January 14, 2022, a copy of the foregoing was filed with the Clerk using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Patrick A. Malone
Patrick A. Malone
